UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

RUSSELL GRANT FINNEGAN,

    Petitioner,

    v.                              CAUSE NO.: 3:25-CV-47-TLS-JEM

WARDEN,

    Respondent.

**OPINION AND ORDER**

Russell Grant Finnegan, a prisoner without a lawyer, filed a habeas corpus petition challenging his criminal contempt conviction in Pulaski County under Case No. 66C01-2210-MC-000168. (ECF 2.) For the reasons stated below, the petition is denied.

I.    BACKGROUND

In deciding the petition, the court must presume the facts set forth by the state court are correct unless Finnegan rebuts this presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). On direct appeal, the Indiana Supreme Court set forth the facts underlying Finnegan's conviction as follows:

> In August 2021, Special Judge John Potter held Russell Finnegan in contempt of court for sending potentially "contumacious" material to Judge Kim Hall. Following the contempt finding, Finnegan mailed to Judge Potter a copy of the contempt order with the words "F*** U HARRY POTTER" and "VOID" written across the pages. Finnegan then sent the judge two letters. In his first letter, Finnegan wrote, "You can shove this back in your c*** craver, whatever orifice that may be of yours or all of them. You sir are a f****** pervert and a very stupid man." In his second letter, . . . [he] closed with, "Ketch you on the flip, peace out c*********!" After receiving these letters, Judge Potter issued a "Rule to Show Cause for Indirect Criminal Contempt" alleging Finnegan's correspondence "show[ed] the continuing contumacious behavior" and "his blatant and continuing disrespect and flagrant disregard for the Court's authority, the Judge, and Attorneys who are officers of this Court."

> During the contempt hearing, Finnegan's counsel informed the trial court that Finnegan was undergoing mental health evaluations in an unrelated criminal case. Following that hearing, Finnegan filed a notice of intent to raise an insanity defense under Indiana Code section 35-36-2-1 and requested the appointment of psychiatrists or psychologists to evaluate him and testify at the contempt hearing. Finnegan's counsel also moved for a continuance for mental-health evaluations. The trial court denied Finnegan's continuance motion but took no action on his request to appoint experts for an evaluation. Following the final contempt hearing, the trial court found Finnegan in contempt under Indiana Code section 34-47-3-1 and ordered him to serve 170 days in jail.[1]

*Finnegan v. State*, 240 N.E.3d 1265, 1268–69 (Ind. 2024) (internal citations, headnote, and footnote omitted).

On appeal, he raised the following claims: (1) "Whether the court's application of I.C. 34-47-3-1 et seq. unconstitutionally infringed on Finnegan's right to free expression guaranteed by the Indiana Constitution, Art. 1, § 9 where the speech at issue was political speech and thus protected"; and (2) "Whether the trial court abused its discretion when it failed to appoint the appropriate medical personnel to evaluate after it accepted Finnegan's Notice of Mental Disease and Defect." (ECF 7-3 at 4.) The Indiana Court of Appeals found the second issue dispositive and reversed, concluding that the trial court abused its discretion when it failed to appoint experts to conduct mental health evaluations after Finnegan raised the issue of his sanity. *Finnegan v. State*, 221 N.E.3d 1232, 1236–39 (Ind. Ct. App. 2023).

The state sought transfer to the Indiana Supreme Court. (ECF 7-6.) The petition was granted, and the Indiana Court of Appeals' opinion was vacated. *Finnegan v. State*, 230 N.E.3d

---

[1] The court notes that a different judge presided over the contempt hearing, and ordered the sentence to be served consecutively to "any sentence now being served at the Indiana Dept. of Corrections." *State v. Finnegan,* No. 66C01-2210-MC-000168 (Pulaski Cir. Ct. docket entry Jan. 27, 2023). At that time, Finnegan was serving (and is still serving) a 12-year sentence imposed in 2022 for unrelated offenses. *See Finnegan v. State*, 206 N.E.3d 401 (Table), 2023 WL 2172347 (Ind. Ct. App. Feb. 23, 2023). He thus has not yet served the sentence imposed for the criminal contempt conviction. The court notes that under Indiana law, a trial court may impose a maximum sentence of six months for criminal contempt, unless guilt is determined by a jury. *Gerber v. State*, 167 N.E.3d 792, 799 (Ind. Ct. App. 2021).

892 (Ind. 2024). The Indiana Supreme Court subsequently held as a matter of state statutory interpretation that "[i]ndirect contempt proceedings are separate from criminal proceedings," and that the "text of Indiana Code chapter 35-36-2 contemplates the assertion of an insanity defense (and the statutory procedural rights it triggers) only in criminal cases." *Finnegan*, 240 N.E.3d at 1271–72. Because Finnegan had no right under state law to assert an insanity defense to the charge of indirect criminal contempt, the Indiana Supreme Court affirmed the decision of the trial court. *Id.* at 1272. Finnegan did not seek review in the U.S. Supreme Court. (ECF 2 at 1.)

He then turned to federal court. In his federal petition he raises one claim, which he articulates as follows: "Denied Fundamental due process of defense of insanity against U.S. Supreme Court precedent." (ECF 2 at 3.) The Respondent argues that this claim is procedurally defaulted and, alternatively, fails on the merits. (ECF 7 at 5–17.) Finnegan filed a traverse in support of his petition. (ECF 13.)

II.   ANALYSIS

Finnegan's petition is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which allows a district court to issue a writ of habeas corpus "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Habeas corpus was intended as a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Gilbreath v. Winkleski*, 21 F.4th 965, 981 (7th Cir. 2021) (citation and internal quotation marks omitted).

The court can grant an application for habeas relief only if it meets the stringent requirements of 28 U.S.C. § 2254(d), set forth as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any

3

>   claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This standard is "difficult to meet" and "highly deferential." *Hoglund v. Neal*, 959 F.3d 819, 832 (7th Cir. 2020) (citation omitted). "It is not enough for a petitioner to show the state court's application of federal law was incorrect; rather, he must show the application was unreasonable, which is a 'substantially higher threshold.'" *Id.* (citation omitted). In effect, "[a] petitioner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Id.* (citation omitted).

Before considering the merits of a claim contained in a habeas petition, the court must ensure that the petitioner exhausted all available remedies in state court with respect to that claim. 28 U.S.C. § 2254(b)(1)(A); *Hoglund*, 959 F.3d at 832. The exhaustion requirement is premised on a recognition that the state courts must be given the first opportunity to address and correct violations of their prisoners' federal constitutional rights. *Davila v. Davis*, 582 U.S. 521, 528 (2017); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). For that opportunity to be meaningful, the petitioner must fairly present his constitutional claim in one complete round of state review, including seeking discretionary review in the state court of last resort. *Baldwin v. Reese*, 541 U.S. 27, 30–31 (2004); *Boerckel*, 526 U.S. at 845. The companion procedural default doctrine, also rooted in comity concerns, precludes a federal court from reaching the merits of a claim when the claim was presented to the state courts and denied on the basis of an adequate

4

and independent state procedural ground, or when the claim was not presented to the state courts even though he had an opportunity to do so. *Davila*, 582 U.S. at 528; *Coleman v. Thompson*, 501 U.S. 722, 735 (1991).

A review of applicable records reflects that Finnegan did not assert any claim in the state proceedings regarding the denial of federal due process. Rather, he couched his arguments in terms of state law and cited only state cases and statutes in support. (*See* ECF 7-3 at 16–18.) To fairly present a claim to the state courts, the petitioner must have alerted the courts to the "federal nature" of the claim. *Baldwin*, 541 U.S. at 33; *Hoglund*, 959 F.3d at 832–33 ("The basic question is whether in concrete, practical terms. . . the state court was sufficiently alerted to the federal constitutional nature of the issue to permit it to resolve that issue on a federal basis." (citation and internal quotation marks omitted)). Finnegan did not do that here. Indeed, the Indiana Supreme Court expressly noted that Finnegan did not raise a due process claim and observed that analysis of such a claim "must wait for a case where it is raised." *Finnegan*, 240 N.E.3d at 1272. Because Finnegan did not present a federal due process claim to the state courts when he had the opportunity to do so, it is procedurally defaulted in this proceeding.[2] *Baldwin*, 541 U.S. at 33.

A habeas petitioner can overcome a procedural default by showing cause for failing to abide by state procedural rules and resulting prejudice. *Davila*, 582 U.S. at 528. "Cause" in this context means "an objective factor external to the defense that impeded the presentation of the claim to the state courts." *Crutchfield v. Dennison*, 910 F.3d 968, 973 (7th Cir. 2018) (citation and internal quotation marks omitted). "A factor is 'external to the defense' only if it 'cannot fairly be attributed to' the prisoner." *Id.* (citation omitted). A petitioner can also overcome a

---

[2] If Finnegan is asking the court to review the Indiana Supreme Court's interpretation of Indiana law, such a claim is not cognizable on federal habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). A federal habeas court has no authority to "second-guess state courts in interpreting state law." *Earls v. McCaughtry*, 379 F.3d 489, 495 (7th Cir. 2004).

procedural default by establishing that the court's refusal to consider a defaulted claim would result in a fundamental miscarriage of justice because he is actually innocent. *House v. Bell*, 547 U.S. 518, 536 (2006).

In his traverse, Finnegan argues that his default should be excused. (ECF 13 at 1–6.) As best as can be discerned, he blames the Indiana Supreme Court for the default because the court did not permit him to make pro se arguments at oral argument since he was represented by counsel. This argument is not persuasive. Finnegan had the opportunity to raise a federal due process claim in his brief, and he did not need an opportunity to speak at oral argument to present the claim. If he is trying to blame his appellate attorney for the default, he did not exhaust any claim about his appellate attorney's performance in the state proceedings, which is a necessary prerequisite for using the claim to establish cause for a default in a federal habeas proceeding. *Edwards v. Carpenter*, 529 U.S. 446, 452–54 (2000).

He also argues that refusing to consider the claim on the merits would amount to a miscarriage of justice. (ECF 13 at 6.) Under this exception, "actual innocence, if proved, serves as a gateway through which a petitioner may pass" to obtain review of a defaulted claim. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). In this context, "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (internal quotation marks and citation omitted). To raise a credible claim of actual innocence, the petitioner must have "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence[.]" *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005) (explaining that a petitioner claiming actual innocence "must have documentary, biological (DNA) or other powerful evidence: perhaps some non-relative who placed him out of the city, with credit card

6

slips, photographs, and phone logs to back up the claim"). The petitioner must demonstrate that in light of this new evidence, "it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327. This standard is "demanding" and can be met only in "extraordinary" circumstances. *House*, 547 U.S. at 538.

Finnegan does not point to any new evidence to demonstrate that he is factually innocent of sending the offensive letters to Judge Potter. *See Santiago v. Streeval*, 36 F.4th 700, 707 (7th Cir. 2022) (holding that petitioner must present "new reliable evidence" not available at trial). He appears to be arguing instead that he was not guilty by reason of insanity, but he provides very limited information about his mental health at that time. He states that he was examined by a neurologist in 2023 who felt further testing was warranted, but he does not indicate whether he underwent the testing and, if so, what it revealed. (*See* ECF 13 at 1–2.) There is also no indication that a mental condition explored by the neurologist in 2023 would have shown that he was insane in August 2021, which is when he wrote the letters to Judge Potter. The court also considers that Finnegan was charged in another criminal case arising from conduct he committed in July 2021, the same time period as when he sent the letters to Judge Potter. Although issues related to his mental health were explored in that case, he was not acquitted on grounds of insanity. Instead, he was found guilty of committing several offenses, and his conviction was affirmed on appeal. *See State v. Finnegan,* 66D01-2107-F6-000062 (Pulaski Sup. Ct. closed May 8, 2025); *Finnegan v. State*, 206 N.E.3d 401 (Ind. Ct. App.), *transfer denied*, 209 N.E.3d 1179 (Ind. 2023). He has not demonstrated that the actual innocence exception applies in this case.

For completeness, the court notes that Finnegan acknowledged in his petition that he did not present his federal due process claim to the Indiana Supreme Court. (ECF 2 at 3.) When asked to explain why he stated, "The Indiana Court of Appeals did a great job. The State then

petitioned to transfer." (*Id.*) This statement does not provide a potential basis to set aside his procedural default under governing standards. Therefore, the court cannot consider his claim on the merits. *Davila*, 582 U.S. at 528. The petition must be denied.

III.    CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, the court must either issue or deny a certificate of appealability in all cases where it enters a final order adverse to the petitioner. To obtain a certificate of appealability, the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

For the reasons explained above, Finnegan's only claim is procedurally defaulted, and he does not present a meritorious basis for setting aside the default. The court finds no reason to conclude that reasonable jurists would debate the court's procedural ruling or find a reason to encourage him to proceed further. Accordingly, the court declines to issue him a certificate of appealability.

IV.     CONCLUSION

For these reasons, the petition (ECF 2) is DENIED, and the petitioner is DENIED a certificate of appealability. The clerk is DIRECTED to close this case.

So ORDERED on August 11, 2025.

>                s/ Theresa L. Springmann
>                JUDGE THERESA L. SPRINGMANN
>                UNITED STATES DISTRICT COURT